GEORGE O. DOHERTY AND EMELIA A. DOHERTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doherty v. Commissioner
Docket No. 16118-86
United States Tax Court
T.C. Memo 1992-98; 1992 Tax Ct. Memo LEXIS 110; 63 T.C.M. (CCH) 2112; T.C.M. (RIA) 92098; February 18, 1992, Filed *110 Decision will be entered under Rule 155. William T. Wagner, for petitioner. Thomas E. Ritter, for respondent. PARR
PARR
MEMORANDUM OPINION PARR, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1982
$ 22,363
$ 1,118
[1]
1983
43,600
2,180
[1]
At trial, respondent conceded the section 6653(a) [2] negligence additions to tax. The sole issue remaining is the valuation of a painting petitioners contributed to the Charles M. Russell Museum. *111 Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Missoula, Montana, when they filed the petition in this case. In 1969 petitioner [3] bought the painting, which we will refer to as Attacking Stagecoach for purposes of this case, from an antique dealer named David Burnham for $ 10,000. During tax year 1982, petitioners donated an undivided 40-percent interest in Attacking Stagecoach to the Charles M. Russell Museum in Great Falls, Montana. In tax year 1983, petitioners donated the remaining undivided 60-percent interest in the painting to the museum. Petitioners determined the painting was an original by Charles M. Russell with a fair market value of $ 350,000 at the date of the donation. At the beginning of trial, petitioners requested that the Court allow them to amend their petition to decrease the fair market *112 value of the painting, and accordingly their claimed deduction, to $ 200,000. Respondent determined the painting is a forgery and had a fair market value of no more than $ 100. Attacking Stagecoach depicts a cowboy action scene in which a stagecoach is fleeing and fighting off an attack by Native Americans. The fleeing stagecoach is in the center of the painting and a fallen Native American and his horse are in the foreground. A lone Native American on horseback is in the left of the painting and more Native Americans on horseback follow behind the stagecoach. A square butte is at the horizon of the painting. The bottom left corner bears the initials CMR and a buffalo skull is beneath the initials. Attacking Stagecoach is painted on duck, a rough canvas not normally used for fine paintings. The painting measures 70 by 64 inches and is not sized. [4]
*113 Charles M. Russell is a noted western artist and Montanan for whom the Charles M. Russell Museum is named. Charles M. Russell's works range from the late 1800's through the early 1900's. Since his death in 1926, Charles M. Russell's works have become quite valuable; one oil painting brought $ 480,000 in the 1970's. At the outset we reiterate our thoughts in Messing v. Commissioner, 48 T.C. 502, 512 (1967), on the issue of valuation: Too often in valuation disputes the parties have convinced themselves of the unalterable correctness of their positions and have consequently failed successfully to conclude settlement negotiations -- a process clearly more conducive to the proper disposition of disputes such as this. The result is an overzealous effort, during the course of the ensuing litigation, to infuse a talismanic precision into an issue which should frankly be recognized as inherently imprecise and capable of resolution only by a Solomon-like pronouncement. [Citations omitted.]
Section 1.170A-1(c)(1), Income Tax Regs., provides that if property other than money is contributed to charity, the amount of the contribution is the fair market value of *114 the property at the time of contribution, reduced as provided by section 170(e)(1) and paragraph (a) of section 1.170A-4, Income Tax Regs., or section 170(e)(3) and paragraph (c) of section 1.170A-4A, Income Tax Regs. Fair market value is the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.
The determination of the fair market value of donated property is a question of fact to be determined from the entire record. Goldstein v. Commissioner, 89 T.C. 535, 544 (1987); Skripak v. Commissioner, 84 T.C. 285, 320 (1985). Petitioner has the burden of proving that the donated painting has a fair market value in excess of the amount determined by respondent. Rule 142(a). There is little doubt that the opposing experts in this case are two of the foremost authorities on the works of Charles M. Russell. Petitioners' expert is Mr. Ray W. Steele and respondent's expert is Mrs. Ginger K. Renner. Mr. Steele worked as a curator for 2 years, and then as the executive *115 director for 18 years at the Charles M. Russell Museum. Mr. Steele retired from the museum in August 1989. While at the museum Mr. Steele authenticated its entire Russell collection of approximately 1,800 works. Mr. Steele testified that Mrs. Renner and he are the top Russell experts in the country. Mrs. Renner owns and maintains the largest archive and library on Russell art and history in the country, and is consulted regularly by Sotheby, Christie's, and Butterfield and Butterfield auction houses to authenticate Russell works of art. Throughout her career, Mrs. Renner has authenticated over 500 Russell pieces. We will first focus on the few areas in which the experts agree. Both Mr. Steele and Mrs. Renner agree that the scene of a stagecoach being attacked is an appropriate subject matter for a Russell painting. Likewise, a square butte, a low mesalike hill which marks the horizon line, is common in Russell paintings. Both experts agree that Attacking Stagecoach is not a finished painting. And finally, both Mr. Steele and Mrs. Renner agree that Attacking Stagecoach is not like any Russell painting they are familiar with. It would be unfair to categorically say that the *116 two experts agree on nothing else. But instead of listing all the specific instances of disagreement, we will now examine each expert's methodology and conclusion. Mr. Steele's expert opinion is that Attacking Stagecoach is an authentic Charles M. Russell painting and was worth $ 200,000 at the time of donation. Mr. Steele bases his conclusion on the following factors. The work appears to have been painted in a fast manner, which according to Mr. Steele, exemplifies the spontaneity of Charles M. Russell. The subject matter and square butte are also characteristic of Russell's work. The coarse canvas is characteristic of Russell because he painted on virtually everything, including tobacco can lids, tin, and clay. Mr. Steele has seen a crude oil drawing by Russell of a deer painted on a petticoat. Mr. Steele concludes that Attacking Stagecoach is an oil sketch that was not intended to be a masterwork, sold, or displayed. Mr. Steele opines that the signature and buffalo skull are authentic, and while the skull is admittedly not as perfect as on many Russell paintings, it is not a forgery. According to Mr. Steele, the false skulls are usually riddled with particular idiosyncrasies *117 absent in the skull on Attacking Stagecoach. Mr. Steele also opines that the CMR initials and the skull were applied at the same time the picture was painted. The oil paint seeped through the canvas, which was not sized, and the pigment consistently shows through the painting. Mr. Steele points out that if the signature were fake and placed on the painting at a later date, then the value and the hue of the signature would not match anything in the painting. Additionally, Mr. Steele observed the canvas is weathered with holes, tears, and stains which occurred after Attacking Stagecoach was painted. Mr. Steele rules out the possibility that Attacking Stagecoach was painted after Russell became famous, because the canvas is so old and is beginning to break down. Additionally, the paint was applied while the canvas was relatively new. In Mr. Steele's opinion, Attacking Stagecoach was painted after 1897, as late as 1910, but closer to 1905. In Mrs. Renner's expert opinion, Attacking Stagecoach could not possibly be an authentic Russell. Mrs. Renner believes the initials and buffalo skull are easy to forge. The particular signature and logo were not used until 1897 or 1898 which *118 dates the piece sometime after 1897. According to Mrs. Renner, Russell's early work was immature or naive, but never as crude as Attacking Stagecoach, which was painted after 1897 when Russell was a much more talented artist. Additionally, no matter how quickly Russell would have painted a piece, it would contain certain elements of his style and skill which Mrs. Renner does not see in Attacking Stagecoach. The elements of the composition convince Mrs. Renner that Attacking Stagecoach is not an authentic Russell. The most predominant example is the fallen figure and horse in the foreground. The figure is very undefined and lacks body weight and volume. Russell's other works which Mrs. Renner described contain figures in the dominant foreground which are always totally identified and defined, as if they are almost three dimensional. The lack of realism in the painting is another element of the composition Mrs. Renner relies on to support her opinion. According to Mrs. Renner, Charles M. Russell liked to paint it "like it was". Attacking Stagecoach has almost no definition in its characters. The gear for controlling the horses is not well defined and is historically incorrect *119 as is the drawing of the stagecoach wheels. While Russell did dash off pen-and-inks and pencil sketches, which nevertheless still contained these common elements of his style, it is Mrs. Renner's opinion that when Russell painted in oil he was very deliberate. Regarding forgeries, Mrs. Renner testified that some of the earliest forgeries were painted while Russell was still alive. These forgeries were oil paintings and almost inevitably copies of Russell paintings that had been reproduced. Mrs. Renner did not opine on when the initials CMR and the buffalo skull were placed on the painting, when the canvas was painted, or whether the initials were painted before or after the damage to the canvas. Both parties want us to rule on the authenticity of Attacking Stagecoach. We decline to do so, particularly when two of the foremost authorities on the works of Charles M. Russell cannot agree on the painting's authenticity. Even though we will not decide whether Attacking Stagecoach is an authentic Charles M. Russell, we recognize that the infirmities described by Mrs. Renner raise a question of authenticity that reasonably should have been known on the critical date, the date of donation. The shadow cast by a question of the authenticity of a painting acts as a depressant on its value. Mathias v. Commissioner, 50 T.C. 994, 998 (1968). *120 We will now consider the experts' testimony regarding the amounts paid for other Russell works around the same time period as the donation. 1981 and 1982 are zenith years for the amounts of money paid for Russell's work. A Russell painting entitled When the Land Belonged to God sold for $ 480,000 in the 1970's. We do not know the condition, size, or date of the painting. A 12- by 16-inch pen and ink sketch in the Texas Art Gallery sold for $ 75,000 during the years in issue. According to Mr. Steele, an illustrated letter would have brought $ 30,000 to $ 40,000 during the years 1981 through 1983. Mrs. Renner testified that the worst painting Russell painted would still bring in $ 15,000 to $ 30,000 just because it is a Russell. Then Mrs. Renner recalled the sale of a Russell she considered to be one of his worst works, a painting entitled Kick Over the Morning Coffeepot. The painting measured 20 by 30 inches and was sold at an auction in Great Falls for $ 55,000, before 1981. In 1979 Mrs. Renner sold what she described as a desirable Russell oil painting. It measured 24 by 36 inches and was in excellent condition because it had been stored in a private vault for years. *121 The work was painted during the middle of Russell's best period, 1907 to 1920, and depicted a cowboy action scene. The painting brought $ 200,000. The fair market value of Attacking Stagecoach is adversely affected by: (1) The poor quality of the painting; (2) the poor quality of the canvas; and (3) the doubt about the painting's authenticity that reasonably should have been known at the time of donation. The Russell work Kick Over the Morning Coffeepot, described as one of Russell's poorer quality paintings, sold for $ 55,000 prior to 1981. Upon considering the infirmities of Attacking Stagecoach, the zenith period in which it was donated, and discounting for the doubt about authenticity that reasonably should have been know at the time of the donation, we conclude it had a fair market value of $ 30,000 at the date of donation. We have considered petitioner's remaining arguments and find them to be without merit. It is further
ORDERED that petitioner's motion for reconsideration is denied.
Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment attributable to negligence.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
3. All future references to petitioner in the singular refer to George Doherty.↩
4. Sizing is the placing of a gesso base on a canvas in order to provide the artist with a smoother surface on which to paint. Sizing also prevents undue absorption of the pigment, oil paint in this case, into the canvas.↩